571 A.2d 881

**Michael Edward CONNELLY**

v.

**STATE of Maryland.**

**No. 1166, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

April 2, 1990.

Russell J. White (White & Karceski, on the brief), Towson, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty.. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before ROSALYN B. BELL, KARWACKI and WENNER, JJ.

ROSALYN B. BELL, Judge.

The question we are asked to decide in this case is whether a police officer, who participated in the investigation, applied for and executed a search warrant that lacked specificity and was stale, knew or should have known of that lack of specificity and, hence, was not entitled to the benefit of the good faith exception. This relies, in part, upon a question of fact which the trial court did not specifically find. Thus, in accordance with Rule 8–604(d)(1), we will remand this case for such a finding. We explain.

## FACTS

Sometime in February of 1988, police officers received a tip from a confidential source that Michael Edward Connelly and others were involved in an illegal gambling operation. Detective James Duffey and other members of the Baltimore County Police Department then began a surveillance operation of Connelly and James Henry Edenton. Supposedly, this surveillance was conducted over the next "several" months.

According to the affidavit and application for the search warrant which Detective Duffey prepared, the police observed Edenton's 7:25 p.m. meetings on "those days surveilled" (Monday through Friday) with Connelly at Connelly's video store. Edenton would arrive at approximately the same time each evening, but always prior to the drawing of the winning number in the Maryland Lottery. Together, Connelly and Edenton would examine slips of paper. At each stop, Edenton would talk with patrons. On one occasion, the affiant overheard a man ask Edenton for his

"winnings." Edenton paid the man in cash from a roll of bills in his pocket. No specific dates for this particular incident or for the general dates of surveillance were asserted in the affidavit. Duffey further averred that between 4:30 p.m. and 7:30 p.m. on the surveillance days, he followed Edenton and observed his visiting in succession a number of bars in and around Baltimore City.

Duffey based his conclusions that Connelly was involved in an illegal bookmaking operation upon both the surveillance operation and the "training, knowledge, and experience" of the officers involved. The application for the search warrant also included information about previous convictions for the two men on bookmaking, gambling and conspiracy charges. The police received a search warrant for Connelly's home and store on November 17, 1988. They conducted a search on November 28, 1988. Connelly filed an omnibus motion to suppress on July 10, 1989. Two days later, at the suppression hearing, Connelly argued that there was no probable cause to support the issuance of the warrant because the information on which it was based was stale. The motions' judge agreed that the information "really was stale or lacked probable cause," but that the good faith exception to the exclusionary rule applied. Thus, the motion to suppress was denied. Connelly waived his right to a jury trial and pled not guilty to all nine counts.

Connelly was subsequently convicted at a bench trial in the Circuit Court for Baltimore County on charges of possessing lottery tickets, keeping a place for the sale of lottery tickets, and two counts of gambling on a sporting event. He was found not guilty of another count of possession of lottery tickets, permitting certain property to be used for unauthorized gambling purposes, two other counts of gambling on a sporting event, and conspiracy. Connelly was sentenced to three years imprisonment which was suspended, a $3,000 fine, one year of probation and 100 hours of community service.

On appeal, Connelly contends that the trial court erred in denying his motion to suppress evidence seized pursuant to the search warrant for lack of probable cause because:

—the affidavit was not sufficiently specific;

—the affidavit was too remote in time to the investigation supporting it; and

—the "good faith" standard was inapplicable.

We agree with Connelly that the affidavit lacked specificity and was stale. We cannot, however, reach a conclusion on the good faith issue because the trial court incorrectly applied the law to this case. We remand the case for a factual finding pursuant to Rule 8–604(d)(1).

## SPECIFICITY

 Appellant argues that the police affidavit was not sufficiently specific to support a finding of probable cause. We agree.

In determining whether probable cause exists to issue a search warrant, the issuing judge's or magistrate's responsibility is "to make a practical, common sense decision whether probable cause exists." *Potts v. State,* 300 Md. 567, 572, 479 A.2d 1335 (1984), quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Great deference is usually given to the magistrate's decision. *Valdez v. State,* 300 Md. 160, 170, 476 A.2d 1162 (1984). Nonetheless, an accused person has the right to show that the affidavit includes material misrepresentations or excludes material information. *Yeagy v. State,* 63 Md. App. 1, 7–8, 491 A.2d 1199 (1985) (citations omitted).

In this case, Detective Duffey submitted an affidavit based upon both a surveillance operation conducted over a period of "several months," [1] and the "training, knowledge, and experience" of the officers involved. The affidavit documented numerous undated observations of appellant

---

**1.** The use of the words "several months" after February 1988 could be purposely vague to leave open the possibility of the time being closer to November without saying so.

and others which could have occurred on any date between February 1988 and November 17, 1988. After conducting their surveillance operation, the police concluded that appellant was involved in illegal gambling activity. Based on the information contained in the affidavit, the judge issued a search and seizure warrant for appellant's home and place of business.

At the suppression hearing, appellant's counsel expressed his belief that without the specific dates of surveillance he could not attack the validity of the warrant as the Supreme Court has authorized in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We agree. *Franks* and its progeny clearly establish the accused's right to show that a material omission in an affidavit was made intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77. Without the specific dates of the incidents relied upon for the affidavit, appellant's counsel could not possibly have met the burden of proving by a preponderance of the evidence that these omissions were made knowingly or recklessly, or that his client was incorrectly identified as the person under surveillance. Once this burden is met, the court then conducts a further evidentiary hearing to determine whether probable cause would exist if the omitted material were included. *Yeagy*, 63 Md.App. at 8, 491 A.2d 1199. Thus, no *Franks* hearing was held in this case, nor could one ever be effectively pursued by appellant.

Although we are aware of the deference given to issuing magistrates and the preference for a "practical, common sense" decision concerning the existence of probable cause, we disagree with the trial judge that there was a substantial basis for concluding that the evidence sought would be discovered in the places described in the warrant. The application lacked any specific dates. The surveillance could have occurred during the "several months" of February, March and April, in which case six months would have elapsed between the last surveillance date and the time of the application for the search warrant. There was no

discussion in the affidavit regarding whether the individuals under surveillance were involved in a continuing enterprise. There was a considerable probability that these activities, given the time lag, were no longer being continued. Nor was there any statement concerning the frequency of Edenton's visits to appellant's residence for which a warrant was issued.

## STALENESS

Appellant contends that the affidavit supporting the warrant was so far removed from the date of the investigation that probable cause was lacking due to "staleness." We agree.

Analyzing probable cause for staleness requires that we examine the dates of both the affidavit and the suspected activity within the circumstances of the case. *Clayton v. State,* 1 Md.App. 500, 503, 231 A.2d 717 (1967).

### —The Affidavit—

The police affidavit was made and the application granted on November 17, 1988. It was executed 11 days later. There is no question but that a period of 11 days between the issuance of the warrant and its execution is within the prescribed 15–day period noted in Md.Code Ann. Art. 27, § 551(a) (1957, 1987 Repl.Vol.) and does not constitute staleness.

### —Suspected Activity—

Probable cause becomes stale if the event constituting probable cause occurred at a time "so remote from the date of the affidavit as to render it improbable that the alleged violation of law authorizing the search was extant at the time the application for the search warrant was made." *Peterson v. State,* 281 Md. 309, 314, 379 A.2d 164 (1977), *cert. denied,* 435 U.S. 945, 98 S.Ct. 1528, 55 L.Ed.2d 542 (1978), quoting *Garza v. State,* 120 Tex.Crim. 147, 48 S.W.2d 625, 626 (App.1932). In a given case, the passage of time may be critical; however, staleness does not depend

solely upon the passage of time. *Yeagy,* 63 Md.App. at 11, 491 A.2d 1199. Staleness varies, depending upon the type of criminal activity, the individual involved, the place to be searched, or the thing to be seized. *Andresen v. State,* 24 Md.App. 128, 172, 331 A.2d 78, *cert. denied,* 274 Md. 725 (1975), *aff'd,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). The ultimate criterion in determining whether probable cause has become stale is reason or reasonableness under the circumstances. *Andresen,* 24 Md.App. at 172, 331 A.2d 78.

In the case at bar, the police conducted a surveillance operation based on a tip they received in February 1988. The surveillance was conducted over "several months." It was during their surveillance that Detective Duffey and others observed Connelly's illegal activity. There is no indication in the affidavit what police investigative activity, if any, occurred between the original surveillance operation, which supposedly began in February, and the application made nine months later in November of 1988. Unfortunately, the affidavit gives no more specific indication of when the police observed Connelly's activities than the "several months" during the surveillance operation.

This Court has upheld a warrant issued on probable cause that was approximately one month old, reasoning that "the criminal activity was regenerating, the criminal entrenched, and the thing to be seized, while easily transferable, was just as easily replaced. Thus, the probable cause was not stale." *Peterson,* 281 Md. at 321, 379 A.2d 164, quoting *Peterson v. State,* No. 590, Sept. Term, 1976, decided 25 Jan. 77, unreported. Evaluations similar to those made in *Peterson* can be made here. But a lapse of one month cannot be equated or even seriously compared to a lapse of, at least facially, six months. The lapse of six months or more between the observation of the facts supporting the warrant and the application for the warrant when considered in the circumstances of this case renders the probable cause stale. Had the police provided more substantial documentation of their observations and the

dates of the surveillance, this problem would not have arisen. Staleness of probable cause, however, does not necessarily render the search invalid, as our next line of discussion demonstrates.

## GOOD FAITH

Appellant argues that the good faith exception to the Fourth Amendment exclusionary rule was inapplicable in this situation. If the good faith exception does apply, then the search, despite the lack of specificity and staleness in the warrant, would be valid and the items obtained from the search were properly admitted into court. If, on the other hand, the good faith exception does not apply, then the trial judge erred when he failed to grant's appellant's motion to suppress.

The United States Supreme Court has held that the Fourth Amendment exclusionary rule should not be applied to bar the use of evidence in the prosecution's case in chief if the evidence was obtained by officers reasonably relying on a facially valid search warrant, even if that warrant is ultimately found to be invalid. *United States v. Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984).

In the case at bar, appellant's claims relate solely to whether the police could have objectively believed the existence of probable cause from the affidavit and evaluation for the warrant. Detective Duffey and the other police officers conducting surveillance documented numerous instances where the behavior of the subjects under surveillance suggested illegal gambling activity. But, for reasons unknown to us, they failed to include the dates of these instances in the affidavit. In the instant case, the same detective, who conducted the search and participated in the surveillance, also prepared the application and affidavit for the search warrant.

The trial judge in the instant case upheld the admittedly stale warrant on the basis of the good faith exception. He observed:

"It's not a question ... whether this warrant was brought to me for my signature, that's not the question, whether or not I would have signed it. The question is that, under Leon, they go to the magistrate, they get a warrant based on information that really was stale or lacked probable cause, and the magistrate signed it. The magistrate is the one that made the mistake. The exclusionary rule is designed to defer [sic] the misconduct of the police rather than publish [sic] the errors of the judicial magistrate. I think the good faith exception applies. I am going to overrule your motion to suppress based on Leon."

The trial judge misapplied the law. According to his statement, once the magistrate signed the warrant, there could be no further review of the conduct of the police officers involved. This is patently incorrect as our discussion above concerning appellant's right to a *Franks* hearing demonstrates. Whether Detective Duffey was entitled to the benefit of the good faith exception is a finding of fact which the trial judge in this case failed to consider or make. His comments as quoted above were conclusory only. Consequently, we remand this case for a clear determination of whether the police officer could have reasonably believed that the application for the search warrant showed valid probable cause in view of his training and experience in these types of surveillance-based applications for warrants. Rule 8–604(d)(1).

On remand, the trial judge should consider whether the police officer's behavior was of the sort mentioned in the portion of *Leon* which states that the police "could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422. If Duffey could have reasonably believed that the affidavit he submitted to the judge contained enough information to sustain probable cause, then he is entitled to the good faith exception. Otherwise, the defect in the warrant would not be overcome by the good faith exception.

If the trial court determines that Detective Duffey was entitled to the good faith exception, then there was no violation of appellant's constitutional rights in admitting the evidence and there is no need for a new trial. *See Warrick v. State,* 302 Md. 162, 174, 486 A.2d 189 (1985) (discovery violation); *Bates v. State,* 64 Md.App. 279, 288, 494 A.2d 976 (1985). Should the trial court so rule, appellant is obviously entitled to appeal if he so desires the trial court's decision that Duffey is entitled to the benefit of the good faith exception. If, however, the trial court determines that Detective Duffey was not entitled to the benefit of the good faith exception, then the judgments of conviction must be vacated and appellant is entitled to a new trial. *Bates,* 64 Md.App. at 292, 494 A.2d 976. We explain why appellant is not entitled to a completely new trial at this juncture.

In *Gill v. State,* 265 Md. 350, 357, 289 A.2d 575 (1972), the Court of Appeals held that while a limited remand "may be suitable to correct procedures subsidiary to the criminal trial, it can never be utilized to rectify prejudicial errors committed during the trial itself." There, the trial court made an erroneous ruling concerning the voluntariness of a confession; this ruling occurred during the trial and affected both the admissibility as well as the evidentiary weight of the evidence. *Jones v. State,* 56 Md.App. 101, 113, 466 A.2d 895 (1983). Thus, a limited remand was improper. In 1981, the Court of Appeals clarified its position and held that a limited remand was proper where the trial court had made an erroneous ruling on appellant's motion to dismiss. *Wiener v. State,* 290 Md. 425, 437, 430 A.2d 588 (1981).

A hearing on a motion to suppress is an important event which may occur before or in the course of a criminal trial. If the State loses this battle, it may well opt to discontinue and *nolle prosse* the charges. Nonetheless, a motion to suppress does not rise to the level of voluntariness of a confession. In *Lodowski v. State,* 307 Md. 233, 256, 513 A.2d 299 (1986), the Court of Appeals rejected the State's suggestions that the trial judge either make factual find-

ings from the existing record or hold another suppression hearing on the voluntariness of the confession. *Lodowski* also notes that the Court of Appeals has approved the use of limited remands in certain instances. *Lodowski*, 307 Md. at 258, n. 3, 513 A.2d 299. More recently, the Court of Appeals endorsed the use of limited remands in connection with challenges of racially discriminatory jury selection. *Stanley v. State*, 313 Md. 50, 76, 542 A.2d 1267 (1988). Like peremptory strikes, the motion to suppress was conducted before the jury was sworn and is a matter collateral to the trial as mentioned in *Gill.* Thus, at this point in time, granting a new trial would be premature.

CASE REMANDED, WITHOUT AFFIRMANCE OR REVERSAL, FOR THE PURPOSE OF CONDUCTING A SUPPRESSION HEARING ON THE AVAILABILITY OF THE GOOD FAITH EXCEPTION.

THE JUDGMENTS OF CONVICTION REMAIN IN EFFECT PENDING FURTHER PROCEEDINGS.

COSTS TO BE PAID BY BALTIMORE COUNTY.