591 A.2d 252

**STATE of Maryland**

v.

**William James JACOBS.**

**No. 1794, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

June 19, 1991.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Scott G. Patterson, State's Atty., for Talbot County, Easton, on the brief), for appellant.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender, and George E. Burns, Jr., Asst. Public Defender, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and ALPERT and DAVIS, JJ.

DAVIS, Judge.

William James Jacobs was charged with possession of narcotics with intent to distribute and related offenses. On June 3, 1987, the Circuit Court for Talbot County denied Jacobs's pretrial motion to suppress tangible evidence and concluded that the probable cause upon which a search and seizure warrant was based was not stale when the warrant was issued. On August 4, 1987, the case was submitted on an agreed statement of facts and Jacobs was convicted of possession of controlled dangerous substances with intent to distribute and maintaining a common nuisance. Jacobs's initial convictions were overturned on direct appeal. On September 7, 1987, Jacobs was retried by the Circuit Court (William S. Horne, J.) and convicted of possession of cocaine with intent to distribute. Jacobs's motion to suppress had been renewed and denied prior to his retrial based on the June 3, 1987 ruling. The court imposed an eight-year sentence, with five years suspended in favor of five years probation.

On September 19, 1989 Jacobs appealed to this Court, claiming that the trial court erroneously denied his motion to suppress. Holding that the probable cause set forth in the application for the warrant was stale, this Court, in a per curiam opinion (No. 1477, filed June 18, 1990) remanded the case. Citing our decision in *Connelly v. State*, 82 Md.App. 358, 367, 571 A.2d 881 (1990), the panel concluded that "whether the police are entitled to the benefit of the good faith exception is a factual issue, to be determined by the trial court ... we may not decide it." Slip op. at 7. At the conclusion of the hearing on remand on November 5, 1990, the court (William S. Horne, J.) granted Jacobs's

motion to suppress, finding that the evidence at issue was seized by police not acting in good faith reliance on a facially valid search warrant. The State appeals from that decision. The sole question presented for our review is whether the trial court, on remand, erred in finding that, pursuant to the good faith exception to the exclusionary rule, Detective Rogers reasonably could not have believed that the issuance of the warrant was predicated on "fresh" probable cause. We issued an order on April 30, 1991, reversing the order of the Circuit Court for Talbot County. We now give our reasons for the determination.

## FACTS

Prior to his first trial, Jacobs moved to suppress evidence regarding approximately 105 grams of cocaine and related items seized from his car on January 19, 1987, pursuant to the warrant. The application and affidavit for the warrant established that the investigation of Jacobs had been triggered by a report from a reliable confidential informant. The affidavit described two controlled narcotics buys by the informant, the first during the week of October 26, 1986 from Jacobs's Doverbrook address, and the second during the week of November 16, 1986 from Jacobs's car. Judge William Adkins, III, issued the search and seizure warrant on January 14, 1987, almost two months after the last controlled narcotics buy.

At the hearing on remand, the affidavit was introduced into evidence and the affiant, Detective James Rogers, testified. Detective Rogers stated that the controlled buys had taken place on October 31, 1986 and November 22, 1986, but that he used the phrase "the week of" in the application to make it more difficult for Jacobs to identify the informant. Detective Rogers stated that he began to prepare the affidavit on or about December 19, 1986, and forwarded it to the State's Attorney before the Christmas holiday. Detective Rogers also explained that he did not go immediately to Judge Adkins after preparing the affidavit because the Talbot County State's Attorney, Phillip C. Fos-

ter, wanted to conduct a personal review of all search warrant applications of rookie investigators, such as Detective Rogers. The application was accordingly reviewed and approved. Not until January 14, 1987, however, seven weeks after the last controlled narcotics buy, was the application presented by Detective Rogers to Judge Adkins, who issued the search and seizure warrant.

Detective Rogers also testified that up to January 14, 1987, he had conducted "continual investigation" including several surveillance operations and a third controlled narcotics purchase at the suspect's Doverbrook address, during which he taped a conversation on January 14, 1987, which was subsequent to the issuance of the warrant, and he had received updates from the confidential informant. Detective Rogers testified, however, that he did not include this additional information in the application for a search warrant because the State's Attorney was unwilling to approve warrant applications which were based on surveillance reports.

Although Detective Rogers could not point to anything in the application itself that would have indicated any continuing involvement of Jacobs's car in the drug trafficking, he explained that the quantities of cocaine involved could only be transported to the house by car. He also testified that he had information that Jacobs planned to change residences, but this information was not included in the warrant application because of the reluctance of the State's Attorney's Office which had a policy against basing warrant applications solely on surveillance. Detective Rogers stated that he informed Judge Adkins of Jacobs's possible move, asking Judge Adkins "to stall another buy to allow for some surveillance time."

## DISCUSSION

Appellant contends that the evidence in the case *sub judice* was seized by a police officer acting in reasonable good faith reliance on a search warrant issued by a de-

tached and neutral magistrate, but ultimately found to be unsupported by probable cause. Appellant refers us to the Supreme Court's opinion in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which established a good faith exception to the exclusionary rule where the police rely on a facially valid search warrant issued by a detached and neutral magistrate.

Appellant asserts that "[t]he evidence adduced at the hearing uniformly established that the officers were acting in good faith reliance on a facially valid warrant." Appellant further cites the lower court's observation "that the officers were following a procedure 'not of their choosing,' and that 'any delays in this case were not necessarily the idea of the officers involved.'" The State argues that by basing its decision on policies over which the police had no control, the lower court committed error in denying the application of the good faith exception.

The lower court, in finding the good faith exception inapplicable, stated:

> The warrant depended on the probable cause that was set forth in the application for the warrant. That probable cause was stale and the Court cannot find that the officers had any objective reasonable belief in the freshness of that probable cause. They had other probable cause, it wasn't stated in the application. It may or may not have been known to the issuing Judge. It was not stated in the warrant and it therefore is not the probable cause upon which the warrant depended.
>
> For all of those reasons the Court finds that the police officers did not act within the good faith exception in this case. And accordingly the good faith exception was not available to the police officers in this case. Accordingly the Court must grant the motion to suppress the evidence seized pursuant to that warrant and it does so grant the motion.

Appellant, in support of its argument that the lower court based its decision on policies over which the police had no

control, refers us to the comments of the lower court to Detective Rogers in an apparent attempt to assuage any feelings of blame or responsibility Detective Rogers might have entertained:

In conclusion, the Court would like to make one statement for the record, and for Detective Rogers. The Court's ruling this afternoon is in no way, nor is it in any way designed to be a criticism of the police officers involved in this case. The Court is aware that those officers were following a procedure which was laid down for them which was not of their choosing. And I just want to make it clear that I am aware that any delays in this case were not necessarily the idea of the officers involved.

The procedural posture of the instant case is unique in that we have, in a previous appeal (*William James Jacobs v. State*, No. 1477, September Term, 1989, filed June 18, 1990) rendered our decision on the limited issue of whether the probable cause contained in the search warrant was stale. Upon deciding that the probable cause was stale, we remanded the case to the Circuit Court for Talbot County on the limited issue of whether the good faith exception to the exclusionary rule under *United States v. Leon, supra,* is applicable to the facts of this case. On the limited issue of whether the probable cause was stale, the lower court's decision was based on the following three premises:

1. That the probable cause set forth in the application for the warrant was stale (a conclusion reached by us in the previous opinion);

2. That the warrant depended upon the probable cause already found to be stale;

3. That Detective Rogers relied, not upon the probable cause stated in the affidavit, but rather on the "other probable cause" represented by the "continual investigation" from November until the issuance of the search warrant on January 14, including a second controlled narcotics purchase with a taped conversation on December 19, 1986.

Undergirding the analysis of the lower court is the legal conclusion that we are restricted to a review of Detective Rogers's objective reasonable belief of the freshness of the probable cause in the application.

The State urges that we look, not just to the objective reasonable belief that Detective Rogers may have had as to the freshness of the probable cause contained in the affidavit, but also to the other information possessed by Detective Rogers, including his continuing surveillance as well as the reasons offered in his testimony as to why the information in the affidavit was not supplemented. The questions thus presented are: (1) Given the present posture of this case, what is the proper standard of review? (2) In light of the prior determination that the probable cause in the application was stale, did the Circuit Court err in confining its consideration to the officer's objective good faith belief in the freshness of the probable cause to that which was contained in the warrant? (3) When *Leon* speaks of objective reasonable good faith reliance on a facially valid warrant, are we required to determine (as apparently did the trial judge) whether the officer's reliance was on something other than the probable cause in the warrant or is the underlying rationale simply that the officer, absent dishonesty or recklessness, should not be penalized because of the fact of issuance of the warrant and the finding of probable cause by one better schooled in the law than he?

Since our discussion is limited to whether the officer harbored an objective good faith belief in the freshness of the probable cause, the purpose of requiring that information relied upon to constitute probable cause be recent is instructive. Speaking for this Court in *Yeagy v. State*, 63 Md.App. 1, 491 A.2d 1199 (1985) Judge Rosalyn Bell noted the rationale for the requirement that information constituting probable cause be recent:

Even though probable cause may exist initially, it becomes stale when the facts and information in the affidavit are 'so remote from the date of the affidavit as to render it improbable that the alleged violation of law

authorizing the search was extant at the time the application for the search warrant was made.' *Peterson [v. State]*, 281 Md. [309] at 314, 379 A.2d 164 [1977], quoting *Garza v. State*, 120 Tex.Cr.R. 147, 149, 48 S.W.2d 625 (1932). Remoteness does not depend solely upon the lapse of a particular amount of time, such as ten days, or two months; it requires determination of the 'likelihood that the evidence sought is still in place' in light of 'the character of the crime . . . of the criminal . . . of the place to be searched. . . .' *Andresen v. State*, 24 Md.App. 128, 172, 331 A.2d 78, *cert. denied*, 274 Md. 725 (1975), *aff'd*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Davidson v. State*, 54 Md.App. 323, 331–32, 458 A.2d 875 (1983).

*Id.* at 11, 491 A.2d 1199.

■ The ultimate determination before the lower court was whether Detective Rogers harbored an objective good faith belief in the likelihood that the evidence sought was still in the Doverbrook residence and in the appellee's car at the time of the execution of the warrant.

## STANDARD OF REVIEW

■ In *Riddick v. State*, 319 Md. 180, 571 A.2d 1239 (1990), the Court of Appeals explained at 183, 571 A.2d 1239:

When the question is whether a constitutional right, such as the one here, has been violated, we make our own independent constitutional appraisal. We make the appraisal by reviewing the law and applying it to the peculiar facts of the particular case. When the facts are in dispute, we accept them as found by the trial judge unless he is clearly erroneous in his judgment on the evidence before him. In ascertaining whether he is clearly erroneous, we give "due regard to the opportunity of the trial court to judge the credibility of the witnesses," as commanded by Md.Rule 8–131(c). (Citations omitted).

Citing *Davis v. North Carolina*, 384 U.S. 737, 741, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966), we said, in *Whit-*

*man v. State,* 25 Md.App. 428, 435, 336 A.2d 515 (1975), that "[w]ith respect to the scope of our review, we observe that in the presence of alleged infringements of constitutionally protected rights, we are required to examine the entire record and to make an independent, reflective constitutional judgment on the facts." Judge Moylan, speaking for this Court in *Walker v. State,* 12 Md.App. 684, 695, 280 A.2d 260 (1971), discussed our role:

> What we mean, therefore, when we say that we have the obligation to make an independent, reflective constitutional judgment on the facts whenever a claim of a constitutionally-protected right is involved is that, although we give great weight to the findings of the hearing judge as to specific, first-level facts (such as the time that an interrogation began, whether a meal was or was not served, whether a telephone call was requested, etc.) we must make our own independent judgment as to what to make of those facts; we must, in making that independent judgment, resolve for ourselves the ultimate, second-level fact—the existence or non-existence of voluntariness.

Accordingly, we must accord deference to the trial judge as to the first level of facts—the length of the delay in applying for a warrant, the pertinent dates, what the state's attorney and the officer did prior to January 14, 1987. It is for us, however, to determine the legal significance of those facts—whether they demonstrate that the officer acted in good faith. We shall therefore examine the entire record and make our own independent evaluation since the instant case clearly involved the review of a constitutionally protected right.

### THE PROPER SCOPE OF THE HEARING

■ As indicated above, the trial judge limited his determination of the officer's objective reasonable belief in the freshness of the probable cause by concluding that "[T]hey had other probable cause, it was not stated in the application. . . . It was not stated in the warrant and it, therefore,

is not the probable cause upon which the warrant depended."

The Court of Appeals, in *Connelly v. State*, 322 Md. 719, 589 A.2d 958 (1991), explained:

As Connelly did not request a hearing pursuant to the procedure authorized by *Franks v. Delaware, supra* [438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)], and thereby create an evidentiary record with respect to the claimed misrepresentation of the affiants, we are limited to the affidavit itself in determining the applicability of the *Leon* good faith exception. Even though the warrant was found to be invalid by the intermediate appellate court on staleness grounds—a conclusion with which we do not take issue—nevertheless, as the cases reflect, considerations of staleness of probable cause turn on the circumstances of each particular case, and reasonable minds may differ as to the correct determination. Accordingly, applying *Leon's* objective test in this case, we think that the officers, exercising professional judgment, could have reasonably believed that the averments of their affidavit related a present and continuing violation of law, not remote from the date of their affidavit, and that the evidence sought would likely be found at Connelly's store and at his residence.

322 Md. at 735, 589 A.2d 958.

Here, unlike *Connelly*, an evidentiary hearing was held pursuant to the procedure authorized by *Franks v. Delaware, supra*. At that hearing, appellee attempted to show that, because of information which came to the attention of Rogers after the application was prepared, the probable cause was stale and, hence, that the likelihood of continuing criminal activity had diminished. Jacobs further attempted to show by extrinsic evidence that information possessed by the officer indicated that Jacobs might move from his residence and that there was inadequate probable cause that Jacobs's vehicle was being used for transportation of narcotics.

The State simply attempted to respond to Jacobs's offer of proof by showing that the officer did possess information which would indicate that the criminal activity was ongoing and thus probable cause was not stale. In its attempt to refute appellee's claim of stale probable cause, the evidence produced by the State also elicited that Detective Rogers had presented the warrant to the chief legal officer—the State's Attorney—who found the application to be legally sufficient and thereafter presented his concerns to the issuing judge who nonetheless signed the warrant. This evidence, which tended to bolster the officer's objective reasonable belief in the existence of probable cause, was elicited during the course of an evidentiary hearing which had been initiated by the appellee in his attempt to show that Detective Rogers was guilty of a material omission in the affidavit made intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

The evidentiary record, which was requisite under *Franks*, served to elicit circumstances from which we perceive objective manifestations of Detective Rogers's good faith belief in the freshness of the probable cause. The trial court opined that, since the probable cause indicating the ongoing nature of the criminal activity was not contained in the affidavit itself, he was not at liberty to consider other objective manifestations of the police officer's good faith. In so doing, he erred.

## THE RELIANCE

The trial judge, on the one hand, declared that he was bound to a consideration only of the probable cause contained in the warrant while, on the other hand, he received evidence outside the warrant in making a determination that the reliance by Detective Rogers was not on the warrant and its supporting probable cause. He concluded that the officer relied on other probable cause developed through his surveillance and the confidential informant. The question thus presented is, when *Leon* speaks in terms

of an officer's good faith reliance on a facially valid warrant, is it permissible to make a factual determination that the reliance was not on the warrant but on other information possessed. That was clearly the court's finding in this case.

■ The further question presented is whether *Leon* contemplates reliance only as it relates to the authority conferred by the warrant permitting the acts of seizure and/or search or reliance on the validity of the warrant as it is supported by adequate probable cause. In the former case, the fact of issuance of a facially valid warrant, without more, is enough to justify the constitutional intrusion in the absence of dishonesty or recklessness or lack of a reasonable belief, on the part of the officer, in the existence of probable cause. *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422.

We believe the answer to whether *Leon* requires more than a facially valid warrant, in the first instance, is answered at 468 U.S. 916, at 104 S.Ct. 3417:

To the extent that proponents of exclusion rely on its behavioral effects on judges and magistrates in these areas, their reliance is misplaced. First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized *pursuant to a warrant* will have a significant deterrent effect on the issuing judge or magistrate. (Emphasis added).

■ We hold that a *Leon* analysis requires a threshold determination that the police officer acted [in seizing or searching] in reliance on the facially valid warrant. It is that he acted under color of authority and pursuant to a

lawful command, *i.e.*, a judicially authorized warrant that imputes to his actions legal efficacy.

Thus, although good faith reliance on the facially valid warrant is accorded great weight, our inquiry does not end there. In our opinion in *Connelly v. State*, 82 Md.App. 358, 571 A.2d 881 (1990),[1] we addressed the ruling of the trial judge that

> It's not a question ... whether this warrant was brought to me for my signature, that's not the question, whether or not I would have signed it. The question is that, under Leon, they go to the magistrate, they get a warrant based on information that really was stale or lacked probable cause, and the magistrate signed it. The magistrate is the one that made the mistake. The exclusionary rule is designed to defer [sic] the misconduct of the police rather than publish [sic] the errors of the judicial magistrate. I think the good faith exception applies. I am going to overrule your motion to suppress based on Leon.

We held that the trial judge misapplied the law in opining that: "[o]nce the magistrate signed the warrant, there could be no further review of the conduct of the police officers involved." *Id.* at 367–68, 571 A.2d 881.

■ We note that we relied upon the procedure set forth in *Connelly*, in remanding the instant case to the Circuit Court for Talbot County. We hold that the trial judge's focus on Detective Rogers's reliance, *vel non*, on the probable cause "not stated in the warrant" was error. The error is particularly significant in the present factual context because Detective Rogers testified that he wished to supplement the warrant with the more current information, but was prevented from doing so by the judge who issued the warrant and by the policy of the State's Attorney's office

---

1. The Court of Appeals in *Connelly v. State*, 322 Md. 719, 589 A.2d 958 (1991), decided that remand for fact finding on the issue of the applicability of the good faith exception was unnecessary where appellant failed to request an evidentiary hearing pursuant to *Franks v. Delaware, supra.*

which frowned upon warrants based on surveillance. *See ante.*

## EVIDENCE OF OFFICER'S OBJECTIVE REASONABLE BELIEF

From the preceding discussion, it is pellucid that the trial court found the good faith exception did not apply because (1) it felt legally constricted to the four corners of the warrant in a determination of the officer's good faith and (2) it made a factual finding that the officer relied, not upon the search warrant, but upon facts outside of the search warrant. Having, in our view, misapplied the procedural dictates of *Leon*, the lower court was prevented from arriving at the appropriate factual determination. Our independent constitutional review leads us inexorably to the conclusion that the evidence presented overwhelmingly demonstrates that Detective Rogers acted in good faith reliance upon the search warrant.

Initially, it should be noted that, as to the information that Jacobs had planned to move on January 16, or 17 of 1987, Detective Rogers testified

You are quite incorrect, sir. I talked to Judge Adkins. As I gave him the warrant I told him what the problem was with Mr. Jacobs and his two addresses. I even advised him that I wanted to hold off and write a new warrant for the Hanson address.

       \*      \*      \*      \*      \*      \*

A. Yes sir, I did ask him [the judge] to stall. I asked to stall another buy to allow for some surveillance time.

Since we herein hold that the lower court was obliged to find that there was, in fact, reliance where a warrant issued is facially valid, it would be difficult to conceive of a better showing of good faith on the part of the police officer than where he specifically advises the issuing magistrate of potential problems with the staleness of the probable cause, and the issuing magistrate nevertheless signs the warrant and ostensibly directs that it be executed.

Additionally, the State's Attorney required that Detective Rogers submit the applications for a search and seizure warrant to his office for approval, and further required that the warrant be based upon two controlled buys. Hence, the detective was relying upon the judgment of the chief law enforcement officer in the county and the issuing magistrate who both approved of the warrant, notwithstanding the desire of Detective Rogers to supplement it.

The Supreme Court discussed the nature and significance of the magistrate's probable cause determination in *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420:

In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."

*Leon*, 468 U.S. at 920–21, 104 S.Ct. at 3419.

\* \* \* \* \* \*

Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued. (Citations omitted).

*Leon*, 468 U.S. at 922, 104 S.Ct. at 3420.

It is difficult to conceive of what more Detective Rogers could have done. The State's Attorney authorized him to present the application to a judge, thereby signifying one State's Attorney's belief that the application was sufficient and not in need of supplementation. The officer, nonetheless, alerted the judge to the fact that Jacobs was in the

process of moving, even suggesting that the judge hold the warrant to allow another controlled buy, yet the judge felt sufficiently sure to issue the warrant anyway. And, as noted, Judge North later concluded that the application was indeed sufficient. There is simply no basis—none whatever—for a finding of lack of good faith reliance on the warrant.

▉ Since the detective relied in good faith on the issuance of the warrant, such good faith reliance would also extend to Jacobs's vehicle. Detective Rogers explained why he had reason to believe there was a continuing presence of a controlled dangerous substance in Jacobs's car:

> I think Mr. Jacobs's continuing conduct in the case that there was—I didn't think the quantities of cocaine we are talking about can either get to his house by itself, or in the event that he traveled to and from the bar scene—numerous intelligence reports about him selling controlled dangerous substance [sic] in the bars, at which time his vehicle was at the bars.

In view of the continuing criminal activity of the appellee, there was little or no danger of an unlawful search of the car. The Supreme Court in *Leon* held that to the extent the affidavit set forth facts demonstrating the basis of the informant's knowledge of criminal activity, which were five months old, the information was fatally stale. The Court, however, applied the good faith exception to the exclusionary rule. Similarly, in this context, we believe that it was not unreasonable for Detective Rogers to believe that probable cause as to Jacobs's car remained fresh.

## CONCLUSION

The rationale of *United States v. Leon,* succinctly put, is that police officers, who have not knowingly or recklessly provided false or misleading information in an affidavit in support of a facially valid search warrant and are not presented with extreme circumstances which would clearly indicate a deficiency in the probable cause, are not required

to second guess a judicial determination as to the existence of probable cause or any technical deficiencies in the warrant. Detective Rogers, notwithstanding his rookie status, acted as a reasonably well-trained police officer, supervising two controlled buys prior to the issuance of the warrant and attempting to bring to the attention of the State's Attorney and the judge who issued the warrant what he considered to be potential problems. While the evidence is not conclusive as to the nature and extent of the particular enterprise in this case, one could hardly contend that a two month delay, *ipso facto*, renders the probable cause so stale that a police officer in the position of Detective Rogers should have substituted his view of the sufficiency of the warrant for that of the issuing judge and insisted that the warrant should not be signed. The trial judge failed to consider all of the relevant evidence on the issue of the officer's objective reasonable belief in the freshness of the probable cause and further failed to accord the proper weight to the fact of the issuance of the facially valid warrant.

On the record before us, it is clear that the officer did act in good faith reliance on the warrant, that the trial court's conclusion to the contrary was clearly erroneous, and that the evidence should not have been suppressed.

For the stated reasons, we issued our per curiam order on April 30, 1991, reversing the order of the trial court.