476 A.2d 1162

**Juan VALDEZ, Pablo Rodriguez, Jose Corderu and Pablo Morales**

**v.**

**STATE of Maryland.**

**No. 85, Sept. Term, 1983.**

Court of Appeals of Maryland.

June 29, 1984.

Gary W. Christopher, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellants.

Diane G. Goldsmith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. AL-BERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

COUCH, Judge.

The issue in this criminal case is whether a written document, specifically a judge's notes, sworn to and signed by affiants, and attached to an application for a search warrant, constituted a valid affidavit as required by Article 27, section 551, of the Maryland Code (1957, 1982 Repl.Vol., 1983 Cum.Supp.). The Circuit Court for Howard County and the Court of Special Appeals concluded that the affidavit, and hence the warrant, was valid. We have concluded that the documents in this case complied with the requirements of Article 27, section 551, and, we affirm.

After a jury trial, Juan Valdez, Pablo Rodriguez, Jose Corderu, and Pablo Morales, appellants, were convicted of two counts of robbery, two counts of theft, two counts of assault, and the use of a handgun in the commission of a felony. Two earlier trials had ended in mistrials. The Court of Special Appeals affirmed in an unreported opinion. No. 1560, September Term, 1982 (June 2, 1983) (per curiam).

We granted certiorari and limited our review to the requirements of Article 27, section 551(a), of the Maryland Code.

I

*The Facts*

On April 3, 1981 at 1:20 a.m., a robbery occurred at the Allview Inn, a liquor store near Columbia. Several men armed with weapons told the employees to lie face down on the floor. The robbers emptied the cash register and removed valuables from both of the employee's pockets. The robbers took several bottles of liquor and left the store.

The police were summoned and began their investigation immediately. The two victims indicated that the robbers spoke a Spanish dialect. A radio alert was broadcast that included the license tag number and description of a car that an officer had observed outside the liquor store just prior to the robbery. Another officer drove to the Rideout Heath area, a Spanish-speaking neighborhood, and located a car bearing the license tag number that was broadcasted. The car to which the license tags were attached, however, was a white Ford and did not match the dark-colored car described. The officer who had seen the car at the site of the robbery was summoned, and the car, a green Chevrolet, that he had seen was found nearby. The Chevrolet did not have license tags. The detectives, after observing the bolts attaching the license tags to the Ford, concluded that someone had tampered with the tags. The green Chevrolet was parked in front of a townhouse at 5923 Harpers Farm Road. Inside this car, the detective could see a bottle of a brand of liquor that had been taken in the robbery. The manager of the Allview Inn was brought to the car, and he recognized the bottle as bearing the same type of distinctive price label and the same price, as that affixed to the bottles sold at the Allview.

The police, meanwhile, also traced the license tag number and determined that the owner lived at 5919 Harpers Farm Road, two doors away. The owner told police that she had

not used the white Ford that evening and, in fact, the car was inoperable. She told the police that the owner of the green Chevrolet was Juan Puente[1] and he lived two doors away. Four Cubans lived with Puente and she had seen them all in the Chevrolet many times.

On these facts and inferences drawn from their investigation the officers sought a search and seizure warrant for 5923 Harpers Farm Road, where they believed the suspects were. The police were concerned about having sufficient manpower to surround the house, and also about the safety of the officers and the public should the suspects, who had been armed during the robbery, emerge from the house. Between 6:30 and 7:00 a.m., therefore, the police telephoned and awakened a district court judge at home. They requested telephonic authorization for a search and seizure warrant because of the danger at risk in the delay of several hours that was necessary to obtain a warrant. They described all the facts that their investigation of the robbery had revealed.

The district court judge felt that she could not authorize a telephonic search. When the judge urged the officer to write out an application and affidavit, he responded that that would take at least two hours and he emphasized the exigency of the situation. She inquired how long it would take the detectives to get to her house, and they indicated that it would not take long. She told them that she had taken notes of what they had told her about the crime and the investigation. She told them what they had told her was more than sufficient probable cause to search the car and the premises. She instructed them that they did need a warrant and that when they arrived she would read back to them her notes of exactly what they had related to her. If her notes were correct, and they swore under the penalties of perjury, she would sign a warrant.

---

**1.** Appellant Valdez's full name is Juan Punte Valdez. We do not concern ourselves here with the possible inferences or discrepancies on this point because it pertains to no issue before us.

The procedure taken followed the format that the judge had laid out over the telephone. The officers arrived at the judge's home; she read her notes to them; they swore under oath that what she had read was true and correct. Both officers signed both pages of the notes in the lower corner. The notes were stapled to the warrant and the warrant application, which the detectives also signed. The warrant was executed at 9:00 a.m. and all four appellants were found on the premises. In the house, the police found bottles of two liquor brands taken in the robbery, a box for a handgun, a receipt for the purchase of a handgun (stating Jose Corderu, appellant, as the purchaser), and a socket wrench which fit the retaining bolts on the license tag of the white Ford.

Later that day the district court judge dictated the notes she had taken during her telephone conversation with the detectives, and had that dictation typed. On April 6, 1983 the judge executed an affidavit wherein she set forth the information, based upon what she had dictated, that the officers had told her over the telephone and had sworn to in her presence.

At trial, appellants' motion to suppress the fruits of the search was denied.

## II

Appellants contend that the trial court erred in refusing to suppress the fruits of the search because the search warrant did not comply with the affidavit requirement of Article 27, section 551, of the Maryland Code (1957, 1982 Repl.Vol., 1983 Cum.Supp.). Appellants contend that in the instant case the judge's post-search affidavit cannot be substituted, and an affidavit was not made when the officers swore to what the judge read back from her notes. They also argue that because the officers swore only to the district court judge's oral statement of what was in her notes, the officers made an oath only, and not an affidavit. Further, appellants argue the oath did not become an affi-

davit because it was not in writing; that although the officers signed the notes, no written recitation evidences that they swore to the facts therein. Appellants also argue that because the judge's notes are illegible, they are not susceptible to use as a fixed pre-warrant record for challenging probable cause. Finally, no paper writing exists in this case which would support a prosecution for perjury, which is the test for the sufficiency of an affidavit.

 We reject appellants' characterization of this case. We agree that the post-warrant affidavit of the district court judge cannot be substituted to support the issuing of the warrant. Further, no doubt exists that Article 27, section 551, requires an affidavit. We, however, have no doubt that the judge's notes, unorthodox though they may be as an affidavit, did serve as an adequate affidavit in this particular case.

We turn first to the statutory requirements for the issuance of search and seizure warrants in Maryland. Article 27, section 551(a), provides:

"Whenever it be made to appear to any judge of any of the circuit courts in the counties of this State, or to any judge of the District Court, by written application signed and sworn to by the applicant, accompanied by an affidavit or affidavits containing facts within the personal knowledge of the affiant or affiants, that there is probable cause, the basis of which shall be set forth in said affidavit or affidavits, to believe that any misdemeanor or felony is being committed ..., then the judge may forthwith issue a search warrant...."

The necessity of an affidavit for a warrant is explicit and the district court judge was correct that telephonic authorizations to search are not acceptable in Maryland. *Compare* Fed.R.Crim.P. 41(c) (allowing telephonic authorizations). Section 551 does not define "affidavit." However, the definition in the General Provisions of the Maryland Rules of Procedure, Rule 5(c), reflects the common understanding of the term in Maryland legal parlance. It reads:

" 'Affidavit' means an oath that the matters and facts set forth in the paper writing to which it pertains are true to the best of the affiant's knowledge, information and belief. An 'oath' means a declaration or affirmation made under penalties of perjury, that a certain statement of fact is true. An oath may be made before an officer or other person authorized to administer an oath, or may instead be made by signing the paper containing the statement required to be under oath and including therein the following representation: 'I do solemnly declare and affirm under the penalties of perjury that the contents of the foregoing document are true and correct.' "

The general meaning of "affidavit" refutes appellant's argument that the writing in this case, that is the judge's notes, is not an affidavit. The concept of an affidavit is not limited to a writing prepared by the affiant. The affiant is required only to make an oath that the matters set forth in the paper writing are true. Maryland Rule 5(c). The oath may be made by signing the paper and including the requisite representation; or the oath may simply be made as a declaration that the statements are true to a person authorized to administer an oath. *Id.; see also Pacific Mortgage & Investment Group v. Wienecke,* 50 Md.App. 128, 130, 436 A.2d 499, 500 (1981). Appellants' argument that the representation of an oath must appear on the face of the paper writing is without merit. The oath was administered orally by the judge in the instant case. *See* Maryland Code (1957, 1981 Repl.Vol.), Article 1, § 11. That the detectives made an oath is uncontested. Their signatures on the notes, therefore, simply represent additional evidence that an oath was taken, and cannot be characterized as demonstrating the lack of a necessary written representation. Appellants' characterization of the oath as only an oath to the judge's statement is without merit. *Cf. Kelso Corp. v. Mayor of Baltimore,* 45 Md.App. 120, 124–25, 411 A.2d 691, 694 (1980). A requirement that an affiant read the writing would prevent the illiterate from ever making an affidavit. In this case no serious question is raised that the judge's

reading of her notes differed in substance from her notes. No question could be raised because the judge had no knowledge of the facts except for her notes. When the officers took an oath upon the judge's recitation of the facts in her notes, they made an oath that the matters and facts set forth in the judge's writing were true to the best of their knowledge, information and belief.

We now focus on the notes themselves. The judge just had been awakened when she took the notes. They were made on the back of her court schedule for that month because that was the paper nearest at hand. The notes are, of course, handwritten, and are concededly difficult to decipher, although the judge certainly was able to read them. The writing includes many cross-outs, many interlineations, and several arrowed insertions. The writing is, just as has been described, notes. The significant facts are recorded, but organization into sentences is rare, and extensive use of abbreviations is made.

Appellants argue that the notes are illegible, therefore, the warrant cannot be challenged for probable cause because the judge's notes do not provide a pre-warrant recordation of the facts relied upon at the time of issuance. As a factual matter, we do not agree. Although the notes are difficult to read, we do not find them to be illegible, accordingly, they do not prevent a challenge to probable cause as it existed at that time. The rule in Maryland is that consideration of the showing of probable cause should ordinarily be confined solely to the affidavit itself. *Smith v. State*, 191 Md. 329, 335–36, 62 A.2d 287, 289–90 (1948). The rule, however, prevents consideration of evidence that seeks to supplement or controvert the truth of the grounds stated in the affidavit. *Id.; Carter v. State*, 274 Md. 411, 439, 337 A.2d 415, 431 (1975). The existence of grounds showing probable cause must ordinarily be shown within the four corners of the affidavit. *See also Collins v. State*,

17 Md.App. 376, 381, 302 A.2d 693, 696 (1973). Therefore, nothing prohibits considering evidence that aids in deciphering what is within the four corners of the affidavit itself. In the instant case, the judge's post-warrant affidavit helps decipher her notes, which constitute the affidavit relied upon for the warrant. Further, the judge testified at the suppression hearing and was thus available to provide testimony to point out what and where facts are included in the notes. The consideration of probable cause continues to rely on a showing of facts within the four corners of the affidavit. We hold that the appellants in the instant case did have a contemporaneous pre-warrant record, consisting of the notes as an affidavit, that allowed them to challenge the probable cause determination.

The Supreme Court of the United States and this Court have said that in reviewing affidavits on a probable cause determination,

"when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones v. United States,* [362 U.S. 257, 270, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 707 (1960) ]."

*United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965), *quoted in State v. Edwards,* 266 Md. 515, 520–21, 295 A.2d 465, 467–68 (1972); *see also Tucker v. State,* 244 Md. 488, 497, 224 A.2d 111, 116 (1966), *cert. denied,* 386 U.S. 1024, 87 S.Ct. 1381, 18 L.Ed.2d 463 (1967); *Henderson v. State,* 243 Md. 342, 346, 221 A.2d 76, 78–79 (1966). Although we are not faced in the instant case with reviewing a probable cause determination, we believe the view is instructive. Appellants have present-

ed us with a hypertechnical argument as to the form of the affidavit. Today, we reject such a hypertechnical approach. We believe the view that the Supreme Court expressed in *Ventresca* in discussing the required showing of probable cause is appropriate in this situation as well. "A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." 380 U.S. at 108, 85 S.Ct. at 746, 13 L.Ed.2d at 689, *quoted in State v. Edwards*, 266 Md. at 520, 295 A.2d at 467; *see also Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527, 546 (1983). We do not wish to discourage the efforts taken by the police in the instant case to obtain a warrant.

■ Appellants' remaining contention is that the writing would not support a prosecution for perjury. Appellants' contention is without merit. Appellants concede that if falsity was shown a prosecution for perjury could lie, but they maintain that the perjury would be based on a false oath rather than a false affidavit. Appellants here rely on the correctness of their contention that the detectives made only an oath and not an affidavit. Because we have rejected this argument already, the basis of appellants' perjury argument is swept away. We have no doubt that if knowing falsity in the notes was proven, the affiants could be prosecuted for perjury. No doubt exists that the officers swore to what was related in the notes. Further, the judge made a sworn affidavit that she related only what was in the notes. Finally, the contents of the notes could be established by the judge's affidavit and her testimony.

We, therefore, hold that no violation of Article 27, section 551(a), of the Maryland Code (1957, 1982 Repl.Vol., 1983 Cum.Supp.), occurred in the instant case. Appellants' motion to suppress on these grounds properly was denied.

JUDGMENTS AFFIRMED.

APPELLANTS TO PAY COSTS.