898 A.2d 961

**Robert E. GREENSTREET**

v.

**STATE of Maryland.**

**No. 55 Sept. Term, 2005.**

Court of Appeals of Maryland.

May 11, 2006.

654

Laura M. Robinson (Lessans, Praley & McCormick, on brief), Glen Burnie, for respondent.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, Judge.

We granted the petition for writ of certiorari filed by Petitioner, Robert Earl Greenstreet, to consider:

1. Whether the Court of Special Appeals [in *State v. Greenstreet*, 162 Md.App. 418, 875 A.2d 177 (2005),] erred in holding that a reviewing court could infer that the issuing judge could have concluded that the date on a warrant affidavit was a typographical error, creating probable cause where none otherwise existed?

2. Whether the Court of Special Appeals erred in suggesting that, consistent with the "four corners" doctrine, the State may present testimony to controvert facts contained in a warrant affidavit to prove that a trash

seizure was conducted at a different time than that reflected in the warrant application?

*Greenstreet v. State*, 388 Md. 404, 879 A.2d 1086 (2005).

## I.

On 15 April 2004, Officer Gregory P. Huck of the Anne Arundel County Police Department applied for a search warrant to search the premises, persons, or things of Petitioner at a Pasadena, Maryland, address. On the same date, a judge of the District Court of Maryland, sitting in Anne Arundel County, issued the warrant as requested. Pursuant to the warrant, police officers, seized a quantity of suspected marijuana from the residence. Greenstreet was charged with possession with the intent to distribute and related offenses.

Petitioner moved to suppress the evidence seized. A hearing was held on 4 October 2004 in the Circuit Court for Anne Arundel County. The warrant and application for the warrant were placed into evidence. No live testimony or additional documentary evidence was offered. Regarding the existence of probable cause for issuance of the warrant, the affidavit stated:

Within the past month, your Affiant, Officer Greg Huck # 1067, received information from several citizens complaints regarding possible CDS activity occurring at the residence of 8472 Meadow Lane, Pasadena, Anne Arundel County, Maryland. The complaints advised that there is a large amount of vehicle and foot traffic visiting the residence and that the vehicles sometimes stay for short periods and the[n] leave the area. I am aware that this type of activity is often indicative of CDS sales activity. The complaints also advised that the house often hosts disorderly parties, which disturb the neighborhood.

On 04–14–03 Cpl. Thomas Newman # 728 and I conducted a trash seizure of 8472 Meadow Lane, Anne Arundel County, Maryland 21122. I was aware that trash collection days for the residence are Wednesday and Saturday. We successfully seized 6 bags of trash from the residence. The

bags were located on the ground and in a trashcan placed at the edge of the roadway in front of the residence. The trash was placed in such a manner that would indicate that it was left for the trash removal company. All the other residences in the area had their trash placed out in a similar manner that would indicate that it was abandoned property. We placed the trash in the back of a department vehicle and transported the refuse back to Eastern District Station. Upon opening the trash bags I recovered the following items from inside the trash bags.

1. Seven (gallon size) Ziploc freezer bags containing greenish-brown plant residue.

2. Five (sandwich size) plastic bags containing greenish-brown plant substance.

3. Large Rival heat seal bag containing greenish-brown plant residue.

4. Loose greenish-brown plant substance (approx. 1.55g)

5. Cellophane wrapper containing white powder residue.

6. Millennium cable bill for Robert Greenstreet 8472 Meadow Lane, Pasadena, Md. 21122

7. Finance statement for Robert E. Greenstreet 8472 Meadow Lane, Pasadena, Md. 21122

8. Household Bank statement for Robert E. Greenstreet 8472 Meadow Lane, Pasadena, Md. 21122

9. Envelope with "Happy Birthday Jay" written on it.

10. Piece of paper with notations "T H Seeds", "S.A.G.E. (160 for 10)", "THE HOG (235 for 10)"

Through my training, knowledge, and experience I recognized the greenish-brown plant residue and greenish-brown plant substance in Items 1–4 to be marihuana. I conducted field tests on Items 1 and 4. Both Items tested positive for marihuana. I recognized the large gallon size Ziploc bags (Item 1) and large Rival heat seal bag (Item3) to be indicative of packaging large amounts of marihuana consistent for distribution/sales. Through my training, knowledge and experience I recognized the white powder residue contained in Item 5 to be cocaine. Item 5 field-tested positive

for cocaine. I recognized the term "T H Seeds", on Item 10, to be an Internet site where marihuana seeds are sold. The terms "S.A.G.E." and "HOG" refer to variations of marihuana.

I have conducted surveillance to the residence and have observed the following cars parked consistently at the residence:

1988 Mitsubishi 2 door (MD tag 393BKM)

1999 Ford 4 door (MD tag GPS274)

A check through MVA revealed the owner of the 1998 Mitsubishi is listed as Sharlie Greenstreet, d.o.b. 3/29/33. A check through police department computers revealed that the vehicle was stopped within the past 6 months and at that time the driver was identified as Robert Greenstreet. A check through MVA revealed the owner of 1999 Ford is listed as Mary Watkins, d.o.b. 6/6/32. A check through police department computers revealed that the vehicle was stopped within the past year and at that time the driver of the vehicle was identified as Robert Jay Watkins. Additional checks through pɔlice department computers revealed that Robert Jay Watkins has a prior CDS arrest. He was arrested by the Baltimore City Police Department on 9/1/96 for Possession of CDS. Watkins also has prior arrests for Obstructing and Hindering, Battery, and 3 prior Disorderly Conducts. A check through police department computers revealed that Robert Greenstreet has prior arrests for Robbery, 1st Degree Assault, False Statement to a State Official.

Through investigation it was learned that there are two pit bull dogs at the residence of 8472 Meadow Lane. There is a "Beware of Dogs" sign posted in the front window of the residence to warn others of the dangerous dogs.

Due to the fact that Robert Jay Watkins has prior arrests for crimes of violence (Battery) and for Obstructing and Hindering and that Robert Earl Greenstreet has prior arrests for Robbery and 1st Degree Assault and that there are dangerous dogs on the property, your Affiant requests

that based on this information, and all other information contained in this affidavit, that executing officers need not knock and announce their presence before entering.

> Based on the merits of this affidavit, your affiant believes that violations of the Maryland Controlled Dangerous Substance Act are occurring with 8472 Meadow Lane, Pasadena, Anne Arundel County, Maryland. Your Affiant prays a search and seizure warrant be issued for the same. (Emphasis added).

Petitioner argued at the hearing on the motion to suppress, and the State conceded, that the warrant was stale on its face because the affidavit indicated that the trash seizure was executed (14 April 2003) more than one year before the warrant's issuance (on 15 April 2004).

> THE COURT: Well any time [the State] wants to concede something I certainly would accept it.
>
> [PROSECUTOR]: Your Honor, I agree.
>
> [DEFENSE COUNSEL]: It's conceding with an asterisk.
>
> [PROSECUTOR]: That on it's face the date of April 14, 2003, one trash rip a year and a day before the warrant is signed, it's stale. I am not going to, I would not argue that a trash rip a year ago makes their marijuana in the house.
>
> So on that particular point I concede that the warrant is stale.
>
> * * *
>
> And I am not even particularly going to argue that it's freshened enough by the first paragraph. I couldn't do it.

Greenstreet, therefore, argued before the Circuit Court that the District Court judge lacked a substantial basis to issue the warrant because probable cause, based on the affidavit, was stale. Petitioner contended that the hearing court neither could assume that the date of 14 April 2003 was a typographical error, nor go beyond the four corners of the affidavit to allow the affiant to supplement the affidavit by testifying to a typographical error if a mistake had occurred. Greenstreet continued that the good faith exception does not apply here because (1) the warrant was stale on its face, (2) the issuing

judge "abandoned" her judicial role nonetheless by issuing a warrant, and (3) Officer Huck, as a well-trained, experienced officer, should have known that the warrant application that he was about to execute was unsupported by probable cause.

In response, the State asserted that the date listed for the trash seizure was a typographical error. Additionally, it proffered that Officer Huck, if allowed to testify, would state that he intended to type or write "04/14/04" instead in the affidavit. The State noted that, although the date for the trash seizure given in a related police report also was listed as "04/14/03," as in the affidavit, it attributed the companion error in the report to the "cut and paste" function of the departmental computer.

The State also contended that, in the alternative, even if the warrant application did not demonstrate probable cause, the evidence seized under the warrant would be admissible under the good faith exception to the exclusionary rule because Officer Huck exercised his professional judgment when he applied for the warrant "on the 15th knowing that he ha[d] found drugs in the trash on the 14th" because "the 2003 [wa]s a typo and not a true fact where he held this [reason for probable cause] for a year." At the hearing, the State elaborated that, while the court cannot go beyond the four corners of the warrant in deciding the staleness issue, it may consider matters beyond the four corners to discern whether the affiant committed a typographical error, but neither the State nor the court may supplement the facts of the affidavit:

[PROSECUTOR]: Well, there is no testimony or contradiction to say that it happened in 2003. The Court, I agree that on its face the Court has to accept 2003. And that is why I can see that on the face the warrant is stale. But to then go to the second inquiry, which is good faith, that is more, that is not just, okay, you know it's either this or that.

That is when the Court has to look at the test of whether the Officer was objectively reasonable.

COURT: Right. But you are basing that on the fact that you know that the Officer told you that it's a typo. If that

evidence wasn't there then would you still make the good faith argument?

[PROSECUTOR]: No. I think that the Court would have to determine that that comes into evidence. I mean all I can do is say it to bolster my argument. But the Court would have to make the determination that comes into evidence. And the reason I think it does is because you have to apply the test.

COURT: Right.

[PROSECUTOR]: And how you apply the test if you don't know what the objectively reasonable basis for it is.

COURT: I understand.

[PROSECUTOR]: I guess that is where I am going with that. For good faith, I agree that you can't supplement the facts. The Officer can't say, oh, yeah, well if you don't like that trash rip I did another one the 13th of April, 2004. I understand you can't put more facts into it.

But to get to the good faith to decide whether there is behavior to punish one must look at the conduct of the police officer in question. And that is why I think that is relevant.

The Circuit Court concluded that the State was not entitled to have Officer Huck testify as to his belief in the existence of probable cause or his good faith in completing the search warrant affidavit and executing the warrant. The hearing judge observed that only upon a showing by a defendant that a governmental affiant has perjured himself on a material matter, when litigating the proprietary of the issuance of a warrant, will witnesses ever be called or extraneous evidence produced, relying on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) and *Fitzgerald v. State*, 153 Md.App. 601, 837 A.2d 989 (2003), *aff'd*, 384 Md. 484, 864 A.2d 1006 (2004). Because the circumstances in the present case did not implicate this rare exception, the judge explained, the court's consideration of the showing of probable cause was limited to the warrant and its application documents ("The State has no right to ask for a *Franks* hearing to explain its

failure to include accurate material facts in a warrant application."). The Circuit Court, therefore, granted Greenstreet's motion to suppress.

In reaching that result, the Circuit Court determined that the good faith exception to the exclusionary rule was not applicable because the police officer lacked an objective, reasonable good faith basis to believe that the warrant was issued properly by the District Court judge due to the facial staleness of probable cause. In addition, the hearing judge found that "Officer Huck was reckless in preparing the application."

The State appealed to the Court of Special Appeals, arguing that the issuing judge could have concluded from the information presented within the four corners of the affidavit that the date of the trash seizure and search was actually 14 April 2004; hence, probable cause existed and was not stale. Alternatively, the State pressed the notion that the good faith exception to the exclusionary rule should be applied. Greenstreet retorted that: (1) the State conceded that the warrant was stale and not supported by probable cause; (2) the State waived the argument that the typographical error could be shown within the four corners of the affidavit because that argument was not advanced in the Circuit Court; (3) the Circuit Court correctly applied the four corners rule; and, (4) the good faith exception did not apply.

The Court of Special Appeals reversed the judgment of the Circuit Court. *State v. Greenstreet*, 162 Md.App. 418, 875 A.2d 177 (2005). The intermediate appellate court resolved the preservation issues in favor of the State. The State was permitted to argue that the typographical error could be shown within the four corners of the affidavit because the Circuit Court "recognized the *issue* to be how it was to proceed when the State contended that the affidavit contained a typographical error," characterizing the appellate change in the State's trial court argument as "merely advanc[ing] an argument for the resolution of that issue that differs from the argument made by the prosecutor." *Greenstreet*, 162 Md.App. at 426, 875 A.2d at 182. (citing Md. Rule 8–131(a) ("Ordinarily,

the appellate court will not decide any other issue [than a jurisdictional one] unless it plainly appears by the record to have been raised in or decided by the trial court[.]") and *Crown Oil & Wax Company of Delaware, Inc. v. Glen Construction Company of Virginia, Inc.*, 320 Md. 546, 560–63, 578 A.2d 1184, 1190–92 (1990)).[1] The Court of Special Appeals characterized the prosecutor's statement to the trial court, "I agree that on its face the Court has to accept 2003," as a concession on a point of law that did not bind the appellate court. *Greenstreet*, 162 Md.App. at 427, 875 A.2d at 182.

Turning to the merits, the Court of Special Appeals determined that, like the circumstances in *Valdez v. State*, 300 Md. 160, 476 A.2d 1162 (1984), testimony to "clarify or explain" the asserted typographical error could be allowed and yet remain consistent with the "four corners" rule that prohibits courts from going beyond the text of a warrant and its supporting application when reviewing the issuing judge's determination of probable cause. *Greenstreet*, 162 Md.App. at 429, 875 A.2d at 183. The court looked to a number of cases from foreign jurisdictions to support the proposition that if the affidavit contained an identifiable and certain clerical error, such as a date material to the probable cause finding, the warrant should not be vitiated. *Greenstreet*, 162 Md.App. at 430–34, 875 A.2d at 184–86. Despite this conclusion, the court determined that it did not need to decide whether the reasoning employed in those cases should be adopted as Maryland law or to order testimony be taken in the present case by the Circuit Court because, "from information within the four corners of the affidavit, the District Court judge reasonably could have concluded that that date was a clerical error, and was intended

---

1. The Court of Special Appeals determined that Rule 8–131(a) vests discretion in an appellate court to consider a new issue, which discretion it chose to exercise here because "neither party, at either level of court, has presented any authority directly bearing on the issue on which the circuit court urged counsel to inform it" and "the 'issue' is one that should be resolved." *State v. Greenstreet*, 162 Md.App. 418, 427, 875 A.2d 177, 182 (2005).

to be 4–14–04." *Greenstreet,* 162 Md.App. at 435, 875 A.2d at 186–87. The intermediate appellate court explained:

> The logical and commonsense way to read the affidavit is that the affiant is presenting the progress of the investigation in chronological order. The initial paragraph explains how the activities of Greenstreet were brought to the attention of the police. That was within the "past month," or within thirty days of 4–15–04. These complaints of neighbors induced the trash trip, mistakenly stated to be on 4–14–03. For "4–14–03" to be considered accurate in this context, one has to accept as logical that the police conducted a trash trip for some unexplained reason and then, for eleven months, sat on the highly incriminating evidence thereby obtained until neighbors complained about possible CDS activity. One must further assume that the police then took an additional thirty days to apply for a search warrant based on the year-old evidence.
>
> More compelling of a finding of typographical error is that the affidavit was presented to the issuing judge on Thursday, 4–15–04. The affidavit states that the trash collection days for the neighborhood of 8472 Meadow Lane "are Wednesday and Saturday," indicating that the trash trip was the preceding day, 4–14–04. By use of the present tense, the affiant is describing a trash collection day that is relatively contemporaneous with the making of the affidavit, and certainly not as far in the past as one year. See *State v. Edwards,* 266 Md. 515, 518–24, 295 A.2d 465, 466–69 (1972) (discussing "present tense rule" in interpreting search warrant applications). On the other hand, if "4–14–03" must be accepted uncritically, the information about the trash pickup days, which obviously is intended to demonstrate the abandonment of the items recovered, becomes irrelevant.

*Greenstreet,* 162 Md.App. at 435–36, 875 A.2d at 187. Because the appellate court determined that the Circuit Court erred when it found that the issuing judge did not have a substantial basis for concluding that the warrant was supported by probable cause, it reversed the suppression order; thus, it became

unnecessary to address the arguments regarding the good faith exception to the exclusionary rule.

## II.

We first need to clarify a preservation question. Although the State made confounding statements about its intent to argue the good faith exception at the suppression hearing, the Circuit Court decided that issue by finding that the good faith exception did not apply. Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any [issue other than jurisdiction] unless it plainly appears by the record to have been raised in or decided by the trial court...."). Thus, the good faith exception properly is before us. In addition, we agree with the Court of Special Appeals when it stated that a party may not concede a point of law to the exclusion of appellate review, as necessary and proper to decide the case. *Greenstreet,* 162 Md.App. at 427, 875 A.2d at 182; *see also Crown Oil,* 320 Md. at 567, 578 A.2d at 1193 (stating that the Court of Appeals is not bound by stipulations on matters of law.) A reviewing court will determine whether evidence in an affidavit is stale by applying a factors test to circumstances of the case before it, see, *infra,* Section III(C) (discussing stale probable cause). The question of staleness is a question of law requiring the application of facts. Hence, we are not bound by the concession made by the prosecutor at the suppression hearing.

## III.

### A.

We determine first whether the issuing judge had a substantial basis to conclude that the warrant was supported by probable cause. *State v. Amerman,* 84 Md.App. 461, 463–64, 581 A.2d 19, 20 (1990). We do so not by applying a *de novo* standard of review, but rather a deferential one. The task of the issuing judge is to reach a practical and common-sense decision, given all of the circumstances set forth in the affidavit, as to whether there exists a fair probability that

contraband or evidence of a crime will be found in a particular search. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). The duty of a reviewing court is to ensure that the issuing judge had a "substantial basis for ... conclud[ing] that probable cause existed." *Id.* (Quotation and citations omitted); *Birchead v. State,* 317 Md. 691, 701, 566 A.2d 488, 492–93 (1989); *Potts v. State,* 300 Md. 567, 572, 479 A.2d 1335, 1338 (1984) (Quotation and citation omitted). The U.S. Supreme Court explained in *Gates* that the purpose of this standard of review is to encourage the police to submit to the warrant process. *Gates,* 462 U.S. at 237 n. 10, 103 S.Ct. at 2331 n. 10, 76 L.Ed.2d at 547 n. 10.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) the Court explained the deference due an issuing judge's probable cause determination:

> Because a search warrant provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime, we have expressed a strong preference for warrants and declared that in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall. Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination. (Quotations and citations omitted).

*Leon,* 468 U.S. at 913–14, 104 S.Ct. at 3415–16, 82 L.Ed.2d 677, 692–93. Although a reviewing court grants deference to the issuing judge's probable cause determination, that deference is "not boundless" because the reviewing court must require that (1) the affidavit supporting the warrant application not be based on reckless falsity, (2) the issuing judge not serve merely as a "rubber stamp for the police," and (3) the affidavit provide the issuing judge with a substantial basis for

cause. *Leon,* 468 U.S. at 914, 104 S.Ct. at 3416, 82 L.Ed.2d at 693. (Quotations and citations omitted).

### B.

■ When reviewing the basis of the issuing judge's probable cause finding, we ordinarily confine our consideration of probable cause solely to the information provided in the warrant and its accompanying application documents. *Valdez v. State,* 300 Md. 160, 168, 476 A.2d 1162, 1166 (1984); *Smith v. State,* 191 Md. 329, 335–36, 62 A.2d 287, 289–90 (1948). We do not consider evidence that seeks to supplement or controvert the truth of the grounds advanced in the affidavit. *Valdez,* 300 Md. at 168, 476 A.2d at 1166; *Carter v. State,* 274 Md. 411, 439, 337 A.2d 415, 431 (1975), *Smith,* 191 Md. at 335–36, 62 A.2d at 289–90. This principle is known as the "four corners rule." We conclude that the Circuit Court in the present case was correct to preclude testimony on the issue of whether a date material to the finding of probable cause was a typographical error.

■ There are some occasions where deviations from the four corners rule are appropriate. One instance where evidence outside of the warrant and its affidavit may be considered is where a defendant makes a required showing for a *Franks* hearing. The case before us is not such a case. A *Franks* hearing is permitted where testimony or other proof is proffered by a defendant that the police officer who sought the warrant provided deliberately false material evidence to support the warrant or held a reckless disregard for the truth. *Franks, v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978). At the best, the hearing judge in the present case found that the affiant was sloppy in preparing the affidavit for the application for the warrant.

■ A second instance where supplemental testimony or other evidence may be considered, without violating the four corners rule, is where the affidavit supporting the warrant is undecipherable, as in *Valdez.* This exception also does not apply to the circumstances of the present case. In *Valdez,* we

approved of the use of a District Court judge's testimony at the suppression hearing for the very limited purpose of translating her contemporaneous notes, which served as the accompanying affidavit to the application for the warrant. *Valdez*, 300 Md. at 169, 476 A.2d at 1166 ("[N]othing prohibits considering evidence that aids in deciphering what is within the four corners of the affidavit itself."). The issuing judge had scribbled notes quickly as she listened to oral statements attested to by police officers during a middle of the night telephone call to her residence, relaying their reasons for believing that a search of a suspect's residence would reveal evidence of a robbery. *Valdez*, 300 Md. at 163–65, 476 A.2d at 1164. After the telephone conversation, the police officers traveled to the residence of the judge, swore to the truth of the statements made to her previously, and signed the judge's written notes of the earlier telephone conversation. *Valdez*, 300 Md. at 163–65, 476 A.2d at 1164. The defense later argued, among other points, that the notes were unreadable and, pursuant to the four corners doctrine, should not have been translated by the issuing judge at the suppression hearing. *Valdez*, 300 Md. at 168, 476 A.2d at 1166.

At the suppression hearing in *Valdez*, the Circuit Court allowed the issuing judge to testify to the facts assertedly contained in the notes, but she was not permitted to supplement the words used in her original notes, or controvert her notes with new information. *Valdez*, 300 Md. at 169, 476 A.2d at 1166–67. We concluded that the testimony taken was consistent with the four corners precept because (1) no *new* information outside of the warrant and application was proffered to support the issuing judge's finding of probable cause and (2) no information from the testimony controverted the statements contained in the notes that served as an affidavit supporting the warrant. *Valdez*, 300 Md. at 169–70, 476 A.2d at 1166–67.

Because the Court of Special Appeals believed that the circumstances here were analogous to those presented in *Valdez*, it determined that the circumstances of the present case would allow testimony as to whether the 14 April 2003

date given in the affidavit was a typographical error. We disagree. To permit Officer Huck to testify to a different date of the trash seizure and search than contained in the affidavit would be to allow him to controvert his statement in the affidavit—an unsanctioned violation of the four corners rule and the purpose for its existence.

## C.

 Nor do we agree with the Court of Special Appeals's conclusion that it may be inferred that the issuing judge recognized the purported typographical error in the affidavit, ignored it, and found a substantial basis to support her finding of probable cause based upon a trash search conducted on 14 April 2004, rather than 14 April 2003. To be sure, issuing judges or magistrates are permitted to grasp such errors, interrogate the affiant about the true facts, and correct the affidavit with the signature or initials of the affiant. *United States v. Servance,* 394 F.3d 222 (4th Cir.), *rev'd on other grounds,* 544 U.S. 1047, 125 S.Ct. 2308, 161 L.Ed.2d 1086 (2005); *see also People v. Royse,* 173 Colo. 254, 477 P.2d 380 (.1970) ("Since only a judicial officer may issue a search warrant, it necessarily follows that only a judicial officer may alter, modify, or correct a warrant."). Close review of the affidavit supporting the warrant is the purpose of the warrant process itself. To countenance otherwise is to degrade the purpose of requiring a magistrate or judge to review and issue warrants. A reviewing court does not re-write deficient or inaccurate warrants after the search has been executed, especially where there is no evidence the issuing judge noticed the problem and, in any event, failed to correct it when appropriate to do so. Thus, in reviewing the issuing authority's probable cause finding in this case, we examine the warrant and its supporting affidavit as written.[2]

---

**2.** We note, as our attention is drawn to it by the Court of Special Appeals, that the warrant application contains a reference to the "regular" trash days in Petitioner's neighborhood as being Wednesday and Saturday and that the trash examined by the officers was appropri-

The Court of Special Appeals cited numerous cases from foreign jurisdictions in support of the position that the four corners rule does not require issuing authorities to be bound by that which is literally, but erroneously, stated in the application for a warrant. *See Greenstreet,* 162 Md.App. at 431–34, 875 A.2d at 184–86 (citing *State v. Rosario,* 238 Conn. 380, 680 A.2d 237 (1996), *State v. Gomez,* 107 Or.App. 698, 813 P.2d 567 (1991), *State v. White,* 368 So.2d 1000 (La.1979), *People v. Lubben,* 739 P.2d 833 (Colo.1987), *State v. Superior Ct.,* 129 Ariz. 156, 629 P.2d 992 (1981), and *Baker v. Commonwealth,* 204 Ky. 536, 264 S.W. 1091 (1924)). These cases stand for the proposition that where a factual date in the affidavit material to the probable cause finding is an apparent typographical error because it is contradicted by another factual time or date more likely to be true, also contained within the four corners of the affidavit, then a reviewing court may infer that a typographical error was made by the affiant and treat it as something other than what was written in the affidavit. We distinguish the present case from the facts of the aforementioned cases because, in the affidavit at issue here, the 14 April 2003 date of the trash seizure was not contradicted by any other date or precise and specific direct fact in the affidavit.

The Court of Special Appeals also looked to *State v. Marquardt,* 43 Or.App. 515, 603 P.2d 1198 (1979), to support the proposition that a reviewing court may infer error even where it is not shown to be an error by contradiction or impossibility

---

ated on a day when other households had put out their trash for collection. The Court of Special Appeals took judicial notice of the facts that 14 April 2004 was a Wednesday and that 14 April 2003 was a Monday. This information is not a sufficient basis from which the issuing judge or a reviewing court could infer that the date 14 April 2003 given in the warrant application clearly was a typographical error because the correspondence of stated trash days is not the caliber of direct information that should be accepted as a contradiction of a precise material date giving rise to probable cause, such as, for example, a statement that "yesterday" affiant collected the said trash bags, or that the trash collected contained a financial statement dated in 2004, both of which statements would contradict the 14 April 2003 date.

by some other fact in the affidavit. In *Marquardt*, the court reasoned:

> It hardly seems likely that the affiant would wait exactly one year from the date he obtained his information and then seek a warrant at 11 p.m. Based on this circumstance, the magistrate, if he noticed the error at all, could properly conclude that it was a clerical error and that the date referred to was [the same date as when he sought the warrant].

*Marquardt*, 603 P.2d at 1199. The Court of Special Appeals highlighted several reasons why it was able to infer that the date in the affidavit in the present case, "4–14–03," was error: (1) the narrative in the affidavit probably was constructed in chronological order; (2) reasonable police officers would not wait one year to get a warrant after a revealing trash seizure; and (3) the days of the week for normal trash pick-up given in the affidavit are consistent with 14 April 2004, but not 14 April 2003. *Greenstreet*, 162 Md.App. at 435, 875 A.2d at 186–87.

We are not persuaded that the affidavit in this case presents enough internal, specific, and direct evidence from which to infer a clear mistake of a material date upon which the affiant police officer depended for probable cause. *See, e.g., Stroud v. Commonwealth*, 295 Ky. 694, 175 S.W.2d 368, 369 (1943) (explaining that where the affiant police officer sought a warrant on 23 January 1942 and indicated that, on 23 January 1941, an informant had told affiant about alleged illegal alcoholic beverages, it was probable that the police officer committed a clerical error, "[b]ut, courts cannot go behind such an affidavit for the purpose of testing its sufficiency, and whether or not the affidavit is sufficient must be determined by what appears on its face."). Our conclusion is not, we believe, the result of reading the warrant in a "hypertechnical" manner. *Valdez*, 300 Md. at 169, 476 A.2d at 1166–67 (stating that a reviewing court "should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner," citing *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965)). Rather, the warrant and its application do not

provide enough inherent contradiction from which to conclude with certainty that the date was in fact simply an error. It is not the legitimate role of a reviewing court to rewrite material portions of a deficient, but issued, search warrant. To do so would abrogate the responsibilities of the issuing authority whom the law entrusts to be a detached and neutral judge of whether the Constitution authorizes search of a person's property in a given case.

## C.

■■■ As stated previously, the Circuit Court concluded that the affidavit failed to provide a substantial basis to support the issuing judge's probable cause finding because the evidence gathered from the 14 April 2003 trash seizure constituted a stale basis for probable cause. We agree with the Circuit Court's conclusion.

■■■ "There is no 'bright-line' rule for determining the 'staleness' of probable cause; rather, it depends upon the circumstances of each case, as related in the affidavit for the warrant." *Connelly v. State,* 322 Md. 719, 733, 589 A.2d 958, 965–66 (1991) (Citations omitted). Factors used to determine staleness include: passage of time, the particular kind of criminal activity involved, the length of the activity, and the nature of the property to be seized. *Peterson v. State,* 281 Md. 309, 317–18, 379 A.2d 164, 168–69 (1977) (Citations omitted). The Court of Special Appeals explained the general rule of stale probable cause in *Andresen v. State,* 24 Md.App. 128, 331 A.2d 78 (1975), which we adopted in *Peterson:*

> The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched

(mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.

*Andresen,* 24 Md.App. at 172, 331 A.2d at 106. Where the affidavit in a case "recites facts indicating activity of a protracted and continuous nature, or a course of conduct, the passage of time becomes less significant, so as not to vitiate the warrant." *Peterson,* 281 Md. at 318, 379 A.2d at 168–69 (Citations omitted); *see also Lee v. State,* 47 Md.App. 213, 219, 422 A.2d 62, 65 (1980) (finding probable cause stale when based upon a drug sale from defendant's apartment eleven months before application for a warrant); *Connelly,* 322 Md. at 734, 589 A.2d at 966 (concluding that probable cause could be found to be stale where the probable cause finding was based on evidence of an alleged illegal lottery operation from observations taken over a "few" months, beginning nine months prior to application for the warrant); *Amerman,* 84 Md.App. at 475, 581 A.2d at 26 (finding probable cause not stale when based on evidence of alleged illegal drug sales from surveillance and investigation conducted one month prior to warrant application).

In *Peterson,* the question presented was whether an affidavit supporting the warrant to search defendant's residence, an apartment, for evidence of illegal drug distribution provided stale probable cause when it described evidence of drug sales from the apartment over a period of approximately three months. *Peterson,* 281 Md. at 320, 379 A.2d at 170. Noting that, "[b]y its nature, traffic in illegal drugs is ordinarily a regenerating activity, and there was clear indication here that the activity was continual [based upon observances of multiple drug sales at the apartment home by police officers a month prior to the application of the warrant], a course of conduct regularly followed over a protracted time." *Peterson,* 281 Md. at 321, 379 A.2d at 170. In addition, we considered that, even though "narcotics are easily transferable, [ ] the repeated

distributions evident from the facts showed that they were readily replaceable and that Peterson had an available source of supply." *Id.* Thus, we concluded, the affidavit indicated that Peterson's apartment probably would contain the contraband at the time of the search and, hence, probable cause was not stale.

In *Lee v. State, supra,* a police officer applied for and obtained a search warrant in December 1978 to search defendant Lee's apartment. *Lee,* 47 Md.App. at 214, 422 A.2d at 63. At the execution of the warrant, police arrested Lee and seized large quantities of illicit drugs, cash, and drug distribution paraphernalia. *Id.* The Court of Special Appeals concluded that the trial court erred in not suppressing the evidence because the application for the warrant showed on its face that the information relied upon by the issuing judge was stale and did not establish probable cause. *Lee,* 47 Md.App. at 215, 422 A.2d at 63. The supporting affidavit contained 24 numbered averments, most of which the Court of Special Appeals found to be "merely conclusory," and properly established as a reliable source only one of the several informants relied upon by the affiant. *Lee,* 47 Md.App. at 217, 422 A.2d at 64. As to that one informant, the affidavit stated that, on 26 January 1978, the reliable informant told the affiant that he had been in Lee's apartment during the week of 12 January 1978 (eleven months prior to the application for the warrant) and had observed approximately three ounces of cocaine, in addition to other narcotics, including marijuana. *Lee,* 47 Md.App. at 217–218, 422 A.2d at 64–65. The intermediate appellate court concluded that probable cause was stale because the affidavit did not indicate illegal activity of a continual nature:

> The warrant was issued on December 19, 1978, eleven months later. There are no facts asserted to indicate any continuing activity between January and December of 1978 which would link the appellant to illegal drugs. It has been held that "where the affidavit recites facts indicating activity of a protracted and continuous nature, or a course of conduct, the passage of time becomes less significant, so as not to vitiate the warrant...." (Citations omitted.) *See Peterson v. State, supra*[, 281 Md.] at 317–18, 379 A.2d at

168–69. No such facts are presented in the affidavit utilized in the matter now before us. (Alteration in original).

47 Md.App. at 219, 422 A.2d at 65.

In the present case, the affidavit suggests the criminal activity of illegal drug distribution from Petitioner's residence, but provides evidence of that activity on only one occasion— the trash seizure and search on 14 April 2003. In contrast to the affidavit in *Peterson,* but similar to the affidavit in *Lee,* the affidavit in the present case does not contain multiple dates of observed drug buys at Greenstreet's home or surveillance over a period of time. The single date furnished supporting probable cause occurred one year prior to the date that the warrant was sought and issued. No sales were observed or purchases made, or other indication of *on-going* drug sales were described in the affidavit that might provide for the issuing judge a substantial basis to conclude that it was probable that evidence of narcotic sales would be found in Petitioner's home one year later. Because the sale of illicit drugs has been recognized as creating easily transferable, perishable, and incriminating evidence, such considerations support the conclusion that, one year later, it is less likely that evidence of drug use and distribution would be found in a suspect's residence. On the other hand, drug distribution from one's residence has been identified as an entrenched activity—a consideration supporting a contrary conclusion. The affidavit here states that neighbors complained of noise and foot traffic and that officers observed a car parked by the Petitioner's house, which vehicle assertedly was registered in the name of a convicted drug dealer. Such averments alone, however, are insufficient to provide probable cause, or support a finding that the "easily transferable" narcotics would probably be in the home a year later. The affidavit does not recite facts indicating activity of a protracted or continuous nature, or a course of conduct. We believe that the evidence providing probable cause was stale under the circumstances of this case because it facially existed at a time so remote from the date of the affidavit as to render it improbable that the alleged violation of the law authorizing the search warrant was extant at the time application was made.

## IV.

 Having concluded that the issuing judge did not have a substantial basis to conclude that the warrant application was supported by probable cause, we next consider whether the good faith exception to the exclusionary rule applies in this case. The good faith exception is described in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Noting that one purpose of the exclusionary rule is to alter the behavior of individual law enforcement officers and their departments to deter them from willful or negligent conduct depriving a defendant of some right, the Court observed that this deterrent policy "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Leon,* 468 U.S. at 919, 104 S.Ct. at 3418, 82 L.Ed.2d at 696.

> This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.⁰ In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-case determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." [*Stone v. Powell,* 428 U.S. 465, 498, 96 S.Ct. 3037, 3054, 49 L.Ed.2d 1067 (1976) ] (BURGER, C.J., concurring). Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.⁰ (Some alteration in original).

*Leon,* 468 U.S. at 920–21, 104 S.Ct. at 3419, 82 L.Ed.2d at 697.

 In delineating this exception to the exclusionary rule, the Court identified four instances where good faith will not

apply: (1) where the issuing authority is "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;" (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979);" (3) where "no reasonably well-trained officer should rely on the warrant ... [such as] an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;' " and, (4) where a warrant is "so facially deficient ... that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 698–99 (Citations omitted); *see also Braxton v. State*, 123 Md.App. 599, 636, 720 A.2d 27, 45 (1998) (stating that a "police officer ultimately is responsible for his or her own actions, regardless of the error of a magistrate in approving the warrant request").[3] Where the defect in the warrant is not readily apparent to a well-trained officer, or, where the warrant is based on "evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause," then the good faith exception will apply. *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422, 82 L.Ed.2d at 701.

The Court cautioned that "in some circumstances the officer[] will have no reasonable grounds for believing that the warrant was properly issued," such as where a warrant is "facially deficient" (i.e., failing to particularize the place to be searched or the things to be seized). *Leon*, 468 U.S. at 922–23, 104 S.Ct. at 3420–21, 82 L.Ed.2d at 698–99. In such case, suppression of the evidence procured would remain an appropriate remedy. *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422, 82 L.Ed.2d 677. A well-trained police officer is required to be aware of well-established current law and to have a reasonable knowledge of what the law prohibits. *Leon*, 468 U.S. at 920 n.

---

**3.** Petitioner argues that it is through the third circumstance that the facts of the present case should be viewed, which was the finding of the Circuit Court below.

20, 104 S.Ct. at 3419 n. 20, 82 L.Ed.2d 677; *Braxton*, 123 Md.App. at 638, 720 A.2d at 46.

"When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Leon*, 468 U.S. at 924, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. A reviewing court confines its good-faith inquiry "to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."[4] *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23, 82 L.Ed.2d at 698 n. 23. To determine whether the officer held an objective reasonable belief that the search conducted was authorized, we review the warrant and its application. *Connelly*, 322 Md. at 735, 589 A.2d at 966; *Behrel v. State*, 151 Md.App. 64, 99, 823 A.2d 696, 716, *cert. denied*, 376 Md. 546, 831 A.2d 5 (2003); *State v. Jacobs*, 87 Md.App. 640, 650–55, 591 A.2d 252, 257–59 (1991).

---

4. In *Leon*, the Court "eschew[ed] inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated search warrant." The Court "believe[d] that 'sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources.'" *Id.* (quoting *Massachusetts v. Painten*, 389 U.S. 560, 565, 88 S.Ct. 660, 663, 19 L.Ed.2d 770 (1968) (White, J., dissenting)).

The Court confines the good-faith inquiry "to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23, 82 L.Ed.2d at 698 n. 23. To determine whether the officer held an objective reasonable belief that the search conducted was authorized, we review the warrant and its application. *Connelly*, 322 Md. at 735, 589 A.2d at 966 ("As Connelly did not request a hearing pursuant to the procedure authorized by *Franks v. Delaware*, *supra*, and thereby create an evidentiary record with respect to the claimed misrepresentation of the affiants, we are limited to the affidavit itself in determining the applicability of the *Leon* good faith exception"); *State v. Jacobs*, 87 Md.App. 640, 650–55, 591 A.2d 252, 257–59 (1991) (stating that testimony of the officer's subjective good faith reliance on a warrant is not appropriate to consider when determining whether the good faith exception applies to a given case).

We applied the good faith exception in *Connelly v. State*, 322 Md. 719, 589 A.2d 958 (1991). At issue in *Connelly* was "whether the officers reasonably believed that the search they conducted was authorized by a valid warrant." *Connelly*, 322 Md. at 729, 589 A.2d at 958 (citing *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984)). To determine whether the officer held an objective reasonable belief, we reviewed the warrant and its application. *Connelly*, 322 Md. at 735, 589 A.2d at 966–67.

In *Connelly*, police, pursuant to a search warrant, seized evidence of illegal lottery and gambling activities. *Connelly*, 322 Md. at 723, 589 A.2d at 961. The State conceded the warrant was not issued upon probable cause. *Connelly*, 322 Md. at 721, 589 A.2d at 959. The affidavit outlined in great detail the daily activities of the defendant and another suspected person. *Connelly*, 322 Md. at 721–23, 589 A.2d at 959–60. It stated that surveillance was conducted over several months, Monday through Friday, from 4:00 p.m. to 7:30 p.m., of a suspect believed to be organizing illegal gambling activities. *Id.*

Connelly argued that probable cause was stale because the affidavit and application for the search warrant, made in November 1988, was based on surveillance conducted in February 1988, some nine months earlier. *Connelly*, 322 Md. at 724, 589 A.2d at 961. Connelly also contended that the times and occasions described in the warrant as on-going activities did not specify dates and thus could have been in March, April, or May, months before the application for the warrant was made. *Id.* Connelly asserted that the good faith exception to the exclusionary rule was inappropriate for application because the warrant was facially deficient. *See id.* (arguing stale probable cause apparent from the warrant application).

We accepted the Court of Special Appeals's determination that, due to staleness, the warrant was not issued upon probable cause. We noted, however, that it was "also possible to determine that the affiants, in preparing the affidavit, and relating their investigatory observations, were describing a

continuing criminal enterprise, ongoing at the time of their application, and thus the probable cause relied upon was not stale." *Connelly*, 322 Md. at 734, 589 A.2d at 966 (citing *Peterson*, which recognized that the language of the affidavit, despite failing to specify specific dates, may be indicative of a present violation when the affidavit is considered in its entirety). We concluded that, based upon a review of the warrant and its application, the officers could have believed reasonably that the averments of the affidavit related a present and continuing violation of law, not too remote from the date of the affidavit to be stale, and that they likely would find evidence of illegal activity sought at Connelly's store and residence. *Connelly*, 322 Md. at 735, 589 A.2d at 966–67.[5]

 We conclude that the good faith exception to the exclusionary rule does not apply in the present case. Unlike the warrant applications in *Peterson* and *Connelly, supra,* the affidavit here outlined only two events separated by eleven months, rather than explicating a series of events and surveillance of illegal activities over three months (as in *Peterson*) or even nine months (as in *Connelly*) before the warrant was sought. Within the month before Officer Huck sought the warrant, anonymous and unestablished informants had complained of noise and increased vehicular traffic at Petitioner's residence—providing reason to believe that drug sales possibly were occurring. According to the affidavit, a year before the warrant was applied for, a single trash seizure revealed evidence of illegal drug use and/or distribution. The affidavit did not describe additional surveillance or reports of present criminal activity. The police officer, in preparing and relating his investigatory observations in the affidavit, was not "describing a continuing criminal enterprise, ongoing at the time of [his] application." *Connelly*, 322 Md. at 734, 589 A.2d at 966.

---

5. In *Connelly*, we found error when the Court of Special Appeals remanded the case to the trial court to decide, as a question of fact, whether the affiants acted in good faith in believing that probable cause existed because that objective ascertainable question is for the appellate court to decide. *Connelly*, 322 Md. at 735–36, 589 A.2d at 966–67.

Additionally, we do not conclude that a reasonable, well-trained police officer executing the warrant would believe that the warrant authorized the search because the lack of probable cause is apparent on the face of the affidavit when the evidence giving rise to a belief in probable cause is a year old and does not indicate continuing criminal activity. We have long recognized the legal concept of the staleness of probable cause. *See, e.g., id.; Peterson,* 281 Md. at 318, 379 A.2d at 167–69; *Behrel,* 151 Md.App. at 88, 823 A.2d at 710. "[I]f the facts set out in the affidavit are 'stale,' the affiant would not have reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched." *Peterson,* 281 Md. at 314, 379 A.2d at 166–67; *see also Behrel,* 151 Md.App. at 88, 823 A.2d at 710; *West v. State,* 137 Md.App. 314, 346, 768 A.2d 150, 168 (2001).

The typographical error, if one, evaded notice by the issuing judge. It is a known police practice sometimes to wait to act on evidence of illegal activity for an extended period of time before seeking a warrant. *See, e.g., Connelly,* 322 Md. 719, 589 A.2d 958 (nine month investigation of illegal lottery operation); *Lee,* 47 Md.App. 213, 422 A.2d 62 (eleven month investigation of illegal narcotic sales). The error committed by the issuing judge, authorizing a warrant with stale probable cause on the basis of the affidavit as written, is not a mere technical deficiency of the warrant or an immaterial error that should escape the notice of a reasonable well-trained officer as affiant either.

As the Supreme Court noted in *Leon,* "the suppression of evidence obtained pursuant to a warrant should only be ordered on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon,* 468 U.S. at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 695. Here, the purposes of the exclusionary rule are served by suppressing the evidence because no police officer reasonably would rely on the warrant due to stale probable cause.

**684**

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.